UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GEORGEA L. PRESSLEY,<br><br>                Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br><br>                Defendant. | Case No. C10-2007-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Georgea L. Pressley seeks review of the denial of her Supplemental Security Income and Disability Insurance Benefits applications. She contends that the ALJ erred by (1) failing to find her anxiety disorder a severe impairment at step two, (2) rejecting the evidence and opinions of Ms. Pressley's treating and examining doctors, (3) evaluating Ms. Pressley's credibility and (4) evaluating her residual functional capacity. Dkt. 15. As discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Ms. Pressley was 46 year old on her alleged disability onset date and is currently 51 years old. She has a 12th grade education, and has worked as an assistant manager of an antique mall and as a housekeeper. On October 17, 2007, she applied for benefits, alleging disability as of February 1, 2006. Her applications were denied initially and on reconsideration. The ALJ

conducted a hearing on January 14, 2010, and on February 18, 2010, issued a decision finding Ms. Pressley not disabled. As the Appeals Council denied Ms. Pressley's request for review, the ALJ's decision is the Commissioner's final decision.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ made the following findings:

**Step one:** Ms. Pressley had not engaged in substantial gainful activity since February 1, 2006. Tr. 13.

**Step two:** Ms. Pressley had the following severe impairments: degenerative joint/disc disease, obesity, and reactive depression. *Id*.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 14.

**Residual Functional Capacity:** Ms. Pressley had the residual functional capacity to perform light work except she is able to perform only simple routine tasks; occasionally engage in all postural movements, including bending, kneeling, climbing, balancing, stooping, crouching, and crawling; and frequently engage in fingering with her left hand. Tr. 15.

**Step four:** Ms. Pressley could perform her past work as a housekeeper. Tr. 20. In the alternative, considering her age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that Ms. Pressley could also perform. Accordingly, Ms. Pressley is not disabled. Tr. 20-21.

## DISCUSSION

**A.     The ALJ's step two determination**

Ms. Pressley first argues that the ALJ erred by failing to find her anxiety disorder to be a severe impairment at step two and failing to apply the special technique for evaluating the severity of her mental impairments. Dkt. 15 at 5.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

The ALJ found that the record indicated Ms. Pressley may have an anxiety-based disorder, but not all mental health specialists diagnosed such a disorder. The ALJ further found that there was no evidence that this condition caused symptoms separate from those stemming from the impairments he found to be severe. The ALJ concluded that, while he found Ms. Pressley's anxiety was not a severe impairment, a finding that it was a severe impairment would not change her residual functional capacity. Tr. 14.

At step two, a claimant must make a threshold showing that (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); 20 C.F.R. § 404.1520(c), 416.920(c). An impairment is medically determinable if it results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1508. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c), 404.1521(a). The step-two inquiry is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Id.*

Ms. Pressley was diagnosed with anxiety and prescribed anxiety medication as early as January 2007. Tr. 260. She later reported still feeling quite anxious despite the medication and also reported chest pain that she believed was related to panic attacks. Tr. 260, 263. In October 2007, treating doctor Monica Carillo, M.D., diagnosed Ms. Pressley with depression with some features of anxiety. Tr. 346. Dr. Carillo and other members of the Sea Mar Clinic treated Ms.

Pressley for anxiety and depression through January 2009. Tr. 370-71. In January 2010, Dr. Carillo opined that Ms. Pressley met the diagnostic and functional criteria for listing 12.06, anxiety-related disorders. Tr. 509-11. She stated that Ms. Pressley had medically documented findings of apprehensive expectation, vigilance and scanning, and persistent, irrational fear, and that this resulted in mild restriction of activities of daily living, extreme difficulties in maintaining social functioning, extreme deficiencies of concentration, persistence, and pace, and episodes of deterioration or decompensation, each of extended duration, that occurred often. *Id.*

In August 2007, examining psychologist Ellen Walker Lind, Ph.D., diagnosed Ms. Pressley with panic disorder without agoraphobia and assessed marked verbal expression of anxiety or fear, noting the presence of panic attacks. Tr. 275. Dr. Lind opined that Ms. Pressley had marked limitations in her ability to learn new tasks, exercise judgment and make decisions, relate appropriately to coworkers and supervisors, and severe limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. Tr. 276.

In July 2008, examining doctor Susan Hakeman, M.D., diagnosed Ms. Pressley with depression and panic disorder with agoraphobia and assessed marked verbal expression of anxiety or fear. Tr. 351. Dr. Hakeman opined that Ms. Pressley had marked limitation in her ability to understand, remember, and follow complex instructions, interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. Tr. 352.

On the other hand, Anselm Parlatore, M.D., who examined Ms. Pressley in March 2008, did not diagnose Ms. Pressley with an anxiety-related disorder. Dr. Parlatore diagnosed only reactive depression. Tr. 300.

The fact that not all examining doctors diagnosed Ms. Pressley with an anxiety-related disorder does not mean that Ms. Pressley does not pass the de minimis screening test at step two. Several treating and examining doctors found that Ms. Pressley had the medically determinable impairment of an anxiety-related disorder and that this impairment had more than a minimal effect on Ms. Pressley's ability to work. Ms. Pressley's claim is not groundless. Substantial evidence does not support this reason for rejecting Ms. Pressley's anxiety disorder as a medically determinable severe impairment.

The Commissioner argues that the ALJ's step-two finding was proper because the ALJ found that Ms. Pressley's anxiety disorder did not cause symptoms separate from her depression and a finding that it was severe would not change her residual functional capacity assessment. Dkt. 16 at 12. However, the record shows that Ms. Pressley experienced panic attacks caused by her anxiety disorder. In addition, Dr. Carillo opined that Ms. Pressley's anxiety disorder caused symptoms of apprehensive expectation, vigilance and scanning, and persistent, irrational fear. Tr. 509. Her depression, on the other hand, caused anhedonia or pervasive loss of interest in almost all activities, sleep disturbances, psychomotor agitation or retardation, feelings of guilt and worthlessness, and difficulty concentrating or sleeping. Tr. 495. The symptoms caused by her anxiety disorder are separate from those caused by her depression. Substantial evidence does not support the ALJ's finding that Ms. Pressley's anxiety did not cause symptoms separate from her depression. The ALJ erred by failing to find that Ms. Pressley's anxiety was a separate medically determinable severe impairment.

An error at step two may be harmless if the omission of a medically determinable severe impairment did not prejudice the claimant at any later steps. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Here, the ALJ failed to consider whether Ms. Pressley's anxiety-related

disorder met or equaled listing 12.06.  Given that Ms. Pressley's treating doctor, Dr. Carillo, opined that Ms. Pressley met the listing, the Court cannot say that this omission did not prejudice Ms. Pressley.  In addition, the ALJ failed to consider the symptoms caused by Ms. Pressley's anxiety-related disorder when evaluating her residual functional capacity.  Again, the Court cannot say that this omission did not prejudice Ms. Pressley.  Accordingly, the Court finds that the ALJ's failure to find Ms. Pressley's anxiety-related disorder was not a harmless error.

Ms. Pressley also asserts that the ALJ erred by failing to follow the "special technique" of 20 C.F.R. § 404.1520a to analyze the severity of her anxiety-related disorder.  Dkt. 15 at 10-11.  When a claimant has a medically determinable mental impairment, the ALJ must rate the degree of functional limitation resulting from the impairment in activities of daily living, social functioning, concentration, persistence, and pace, and episodes of decompensation.  20 C.F.R. § 404.1520a(c).  If the degree of functional limitation in the first three areas is "none" or "mild" and it is "none" in the fourth area, the impairment is generally not severe.  20 C.F.R. § 404.1520a(d). Otherwise, the impairment is severe, and the ALJ must consider whether it meets or equals a listed impairment at step three.  *Id.*

The ALJ performed this analysis, but considered only Ms. Pressley's depression.  While the Court agrees that the ALJ erred by failing to evaluate Ms. Pressley's anxiety disorder using the special technique, the Court does not agree that the ALJ must perform the analysis separately for each mental impairment.  So long as the ALJ considers the effects of all mental impairments when applying the special technique, the ALJ has sufficiently complied with the requirement.  On remand, the ALJ should consider the limitations arising from all of Ms. Pressley's mental impairments when using the special technique.

**B.     The ALJ's evaluation of the medical evidence**

Ms. Pressley argues that the ALJ erroneously evaluated the medical evidence related to her mental impairments. Specifically, she argues that the ALJ erred in rejecting the opinions of Dr. Carillo, Dr. Lind, and Dr. Hakeman and in giving great weight to the opinions of non-examining state-agency medical consultants. Dkt. 15 at 11.

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

*1.     Dr. Carillo*

As noted above, Dr. Carillo opined in January 2010 that Ms. Pressley met the requirements of listing 12.06, anxiety-related disorders, with the symptoms and functional limitations previously described. Tr. 509-11. She also opined that Ms. Pressley met the requirements of listing 12.04, affective disorders, with medically documented persistence of

depressive disorder with anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor agitation or retardation, feelings of guilt or worthlessness, and difficulty concentration or thinking.  She opined that these symptoms resulted in mild restriction in activities of daily living, marked difficulties maintaining social functioning, extreme deficiencies of concentration, persistence, or pace, and episodes of decompensation, each of extended duration, which occurred often.  Tr. 495-96.

The ALJ did not afford any weight to these opinions, finding that Dr. Carillo is not a mental health specialist, Dr. Carillo's reports contradict her own treatment records, and significant time had passed between the time Dr. Carillo last treated Ms. Pressley and the time she offered her opinions.  Tr. 19.

An ALJ may give more weight to a specialist's opinion about medical issues related to her area of specialty.  20 C.F.R. § 404.1527(d)(5).  But the fact that a primary care physician is not a mental health specialist is not a reason to reject her opinion about a claimant's mental impairments.  *Lester*, 81 F.3d at 833.  This was not a legitimate reason to reject Dr. Carillo's opinion.

An ALJ may give less weight to a doctor's opinion that is inconsistent with the doctor's own clinical notes, recorded observations, and other opinions.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  But the ALJ may not reach a conclusion first and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.  *Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th Cir. 1984).  Here, the ALJ found that Dr. Carillo's treatment notes from October 2008 and January 2009 showed that Ms. Pressley felt no depression and that anxiety received scant mention in the record, citing to the treatment note from June 2008.  Tr. 19.  Although Ms. Pressley responded in the negative to both questions on a

depression screening in October 2008, she answered in the affirmative to one of the questions at her January 2009 visit and received refills of her depression and anxiety medications at that visit. Tr. 370, 377. This is in direct conflict with the ALJ's finding that this treatment note showed that Ms. Pressley felt no depression. In addition, Dr. Carillo's June 2008 note states that Ms. Pressley has a "long-standing" history of depression and anxiety and discusses medications she has used in the past and symptoms she has experienced. Tr. 382. This note, rather than show a "fleeting" reference to anxiety, documents the long-standing nature of the problem and Dr. Carillo's treatment of it. Moreover, a review of the remainder of Dr. Carillo's treatment notes show that she provided treatment for Ms. Pressley's depression and anxiety, along with other health conditions, since 2005. Tr. 342. The ALJ ignored the course of Dr. Carillo's treatment and erroneously interpreted the individual the notes he did consider. The ALJ's finding that Dr. Carillo's treatment notes contradict her opinion is not supported by substantial evidence.

Finally, an ALJ may not disregard a medical opinion solely because it is retrospective in nature. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Here, the ALJ rejected Dr. Carillo's opinions because she made them one year after she last treated Ms. Pressley, finding that "significant time" had passed since she treated Ms. Pressley. Tr. 19. Whether or not this is a "significant" period of time, it is not in and of itself a legitimate reason to reject the opinion.

In sum, the ALJ did not provide specific and legitimate reasons supported by substantial evidence for giving Dr. Carillo's opinions no weight.

*2.    Dr. Lind*

Dr. Lind evaluated Ms. Pressley in August 2007 and May 2009, diagnosing Ms. Pressley with panic disorder without agoraphobia. In August 2007, Dr. Lind opined that Ms. Pressley had marked limitations in her ability to learn new tasks, to exercise judgment and make decisions,

and to relate appropriately to coworkers and supervisors, and severe limitations in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. She noted Ms. Pressley's physical problems and commented: "Likely to not be consistent in attendance to a job due to situational instability at this time and physical problems. Panic attacks." Tr. 274-79. In May 2009, Dr. Lind opined that Ms. Lind had marked limitations in her ability to understand, remember, and follow complex instructions, learn new tasks, exercise judgment and make decisions, perform routine tasks, relate appropriately to coworkers, supervisors, and the public, and respond appropriately to and tolerate the pressure and expectations of a normal workplace. Dr. Lind again commented: "Socially anxious—panic attacks, not reliable due to physical limitations." Tr. 414-419.

The ALJ did not give any weight to Dr. Lind's opinions, finding that they were contrary to Ms. Pressley's reported activities and Dr. Lind's own mental status examination findings. The ALJ also found that Dr. Lind's reports were ambiguous because she attributed some of Ms. Pressley's limitations to her physical problems without distinguishing those due to her mental limitations. The ALJ noted that Dr. Lind, a psychologist, is not a medical physician. Tr. 19.

An ALJ may reject a doctor's opinion that is contradicted by the doctor's own clinical notes. *Bayliss*, 427 F.3d at 1216. Dr. Lind's mental status examinations did not reveal any serious deficits, despite Dr. Lind's assessment of marked and severe limitations. For example, in May 2009, Ms. Pressley was able to follow a three-step command, but Dr. Lind assessed her with marked difficulties in following complex instructions. Tr. 416, 419. This was a specific and legitimate reason to reject Dr. Lind's opinion.

In addition, the ALJ's finding that Dr. Lind did not distinguish between Ms. Pressley's mental and physical limitations is a rational interpretation of the doctor's comments. Ms.

Pressley asserts that Dr. Lind merely mentioned Ms. Pressley's physical problems, while she focused mainly on Ms. Pressley's situational instability and panic attacks. Dkt. 15 at 17. While this is one possible interpretation of Dr. Lind's comments, where there is more than one rational interpretation of the evidence, the Court must uphold the ALJ's interpretation. *Thomas v. Barhnart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ was not required to accept a psychologist's opinion about a claimant's physical limitations. The ALJ provided specific and legitimate reasons to reject Dr. Lind's opinions.

   *3. Dr. Hakeman*

   Dr. Hakeman examined Ms. Pressley in July 2008. She diagnosed Ms. Pressley with depression NOS and panic with agoraphobia and opined that Ms. Pressley had marked limitations in her ability to understand, remember, and follow complex instructions, interact appropriately in public contacts, respond appropriately to and tolerate the pressures and expectations of a normal workplace, and control physical or motor movements and maintain appropriate behavior. Tr. 350-54.

   The ALJ found that Dr. Hakeman's opinion was largely consistent with the residual functional capacity finding, which accounted for her problems with complex instructions and work-related pressure, and gave Dr. Hakeman's opinion weight to that extent. The ALJ found, however, that the record did not support Dr. Hakeman's finding that Ms. Pressley had marked limitations with public interaction, noting that Ms. Pressley used public transportation, interacted with others, and took walks. Tr. 19.

   Ms. Pressley argues that the ALJ erred in finding that the limitation to simple, routine tasks adequately accommodates Dr. Hakeman's opinion of marked limitations with complex instructions and work-related pressure. Dkt. 15 at 19. While the Court concludes that the

REPORT AND RECOMMENDATION - 11

limitation to simple, routine tasks adequately accommodates Dr. Hakeman's opinion about Ms. Pressley's difficulties with complex instructions, this limitation does not account for the doctor's opinion about Ms. Pressley's difficulties with work-related pressure. A limitation to simple, routine tasks, without more, does not adequately accommodate a marked restriction in dealing with the pressures and expectations of a normal work environment. *See* Social Security Ruling 85-15. The ALJ's residual functional capacity finding did not adequately address Dr. Hakeman's opinion or explain why the ALJ did not adopt it.

In addition, the ALJ's finding that the record does not support Dr. Hakeman's opinion about Ms. Pressley's ability to interact with the public is not supported by substantial evidence. Two of the activities the ALJ cites, using public transportation and taking walks, may show that she can be out in public, but does not show that she can interact with the public in a work-like setting. Further, the ALJ's finding that Ms. Pressley "interacts with others" is vague and not the sort of specific reason necessary to reject an examining doctor's opinion.

In sum, the ALJ failed to properly assess Dr. Hakeman's opinion and should reassess it on remand.

   *4. State-agency doctors*

State-agency consulting doctor Mary Gentile, Ph.D., opined in March 2008 that Ms. Pressley had moderate limitations in her ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting. Dr. Gentile believed Ms. Pressley would be capable of simple and well-learned complex tasks, and she may have some mild lapses in attention and concentration. She had no social limitations but would do better in a more routine work environment. Tr. 306-23. William Lysak, Ph.D., affirmed Dr. Gentile's opinions as written. Tr. 364. The ALJ afforded significant weight to their opinions,

finding that they were consistent with the overall record. Tr. 18.

Ms. Pressley argues that the ALJ erred by assigning great weight to the consultants' opinions. A non-examining doctor's opinion is generally entitled to the least weight and cannot, by itself, constitute substantial evidence to support rejecting a treating doctor's opinion. *Lester*, 81 F.3d at 830. Here, the consultants' opinions contradict Dr. Carillo's opinions about the nature and severity of Ms. Pressley's mental impairments and the functional limitations these impairments cause. Given this contradiction, the ALJ's finding that the consultants' opinions are consistent with the overall record is not supported by substantial evidence. On remand, the ALJ should reconsider the weight to give to the opinions of these non-treating, non-examining doctors.

**C.  The ALJ's credibility assessment**

Ms. Pressley argues that the ALJ erred in finding her not fully credible. The ALJ did not find that Ms. Pressley was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

Ms. Pressley testified that she had arthritis in her back, hips, wrists, fingers, and knees and that because of her arthritis she was not able to stand for long periods of time, squat, bend over, kneel, or reach out in front of her, lift more than 10 pounds, or engage in repetitive activities. Tr. 41-43. She further testified that her anxiety and depression were situational and if things "stack up," such as having too many appointments in a day, she "freaks out" and has a panic attack. Tr. 47-48.

The ALJ found Ms. Pressley to be not entirely credible. The ALJ found several inconsistencies between Ms. Pressley's testimony and the record. For example, the ALJ noted an inconsistency between Ms. Pressley's testimony that she injured her back in 2006 and her report to a provider in April 2007 that she injured her back several years ago. Tr. 16. The ALJ may consider inconsistencies between the claimant's testimony and the record in evaluating her credibility. *Burch v. Barnhart*, 400 F.3d at 680. The ALJ properly considered this discrepancy in evaluating Ms. Pressley's credibility.

However, the ALJ also found that Ms. Pressley testified that a doctor had directed her to stop taking "medications" because of her kidneys, but the record showed the doctor directed her to stop her arthritis and blood pressure medication only, not "all medications as the claimant seemed to imply." Tr. 17. Ms. Pressley testified that Dr. Carillo placed her on etodolac for her arthritis, but her new treating doctor "had me stop it because it was interfering with my kidneys" due to her new blood pressure medication. Tr. 41-42. When later asked to list her current medications, Ms. Pressley listed acetaminophen, ranitidine, buspirone, lisinopril, and etodolac, and affirmed that her doctor had put her back on her arthritis medication. Tr. 62-63. Ms. Pressley did not state, or even imply, that she had stopped taking all medications. She stated only that she had stopped taking etodolac and later restarted it. This reason for questioning her credibility is not supported by substantial evidence.

The ALJ also noted Ms. Pressley's poor work history, working for multiple employers for short periods of time before her alleged disability onset date. Tr. 16. A claimant's poor work history can support an adverse credibility finding. *Thomas*, 278 F.3d at 959. This was a proper consideration in evaluating Ms. Pressley's credibility.

The ALJ considered Ms. Pressley's daily activities, finding that they suggest she can

REPORT AND RECOMMENDATION - 14

meet the physical requirements of light work. The ALJ noted that Ms. Pressley was able to prepare meals, perform household chores, go for walks, go shopping alone, and use a computer for tasks such as email and chatting. Tr. 17. Daily activities that are transferrable to a work setting may be grounds for an adverse credibility finding. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But daily activities that do not contradict a claimant's other testimony or meet the threshold for transferrable work skills cannot form the basis of an adverse credibility determination. *Orn*, 495 F.3d at 639. The ALJ did not suggest that any of Ms. Pressley's daily activities are transferrable to a work setting. And the mere fact that a claimant carries on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, "does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050. Plaintiff's daily activities do not constitute a specific and legitimate reason for discounting her credibility.

The ALJ used both valid and invalid reasons to find Ms. Pressley not fully credible. An ALJ's use of invalid reasons to support his adverse credibility finding may be harmless if, despite the error, there remains substantial evidence to support the ALJ's conclusion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Here, given the ALJ's failure to consider Ms. Pressley's anxiety disorder as a severe impairment at step two, combined with his use of invalid reasons to undermine her credibility, the Court cannot say with confidence that substantial evidence supports the ALJ's credibility finding. On remand, the ALJ should reevaluate Ms. Pressley's credibility finding.

### D. The ALJ's residual functional capacity assessment

Ms. Pressley asserts that because the ALJ failed to properly assess all of her severe impairments at step two, his residual functional capacity determination is erroneous. Dkt. 15 at

21-22.  The Court agrees, particularly with respect to the ALJ's assessment of Ms. Pressley's mental residual functional capacity.  An ALJ who erroneously excludes a severe impairment at step two necessarily fails to consider how the combination of all her impairments affected her residual functional capacity.  *Smolen*, 80 F.3d at 1290.  Here, the ALJ erroneously failed to consider Ms. Pressley's anxiety-related disorder when evaluating her residual functional capacity.  On remand, the ALJ should reevaluate Ms. Pressley's residual functional capacity, taking care to include the effects of all her impairments, alone and in combination.

Ms. Pressley also argues that the ALJ erroneously rejected the opinions of Dr. Carillo and Chris Urquhart, PA-C, as to Ms. Pressley's physical capacities and thus erroneously evaluated her physical residual functional capacity.  Dkt. 15 at 22.  However, Ms. Pressley fails to develop this argument.  The Court may deem arguments that are unsupported by explanation to be waived.  *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (citing *Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).  The Court deems this argument waived and thus will not consider it.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should (1) reassess Ms. Pressley's severe impairments, (2) reassess the medical opinions of Dr. Carrillo, Dr. Hakeman, and the state agency medical consultants, (3) reevaluate Ms. Pressley's credibility, and (4) redo the five-step disability evaluation process as necessary.

Objections to this Report and Recommendation, if any, must be filed and served no later than **August 30, 2011.**  If no objections are filed, the matter will be ready for the Court's

consideration on that date. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Responses to objections must be filed no later than 14 days after being served with objections. Objections and responses shall not exceed twelve pages. The failure to timely object may affect your right to appeal.

DATED this 16th day of August, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17